| | |
|---|---|
| BOBBY DUNCAN and<br>MELISSA DUNCAN,<br>husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL EDUCATION ASSISTANCE<br>CORPORATION d/b/a ETSU FAMILY<br>PHYSICIANS OF KINGSPORT d/b/a<br>ETSU FAMILY MEDICINE SERVICE d/b/a<br>ETSU PHYSICIANS & ASSOCIATES d/b/a<br>UNIVERSITY PHYSICIANS PRACTICE GROUP,<br>PETER RHEA BOCKHORST,<br>MARK KENNETH BRUMMEL,<br>SURGICAL ASSOCIATES OF KINGSPORT, INC.,<br>ANDREW PHILLIP KRAMER,<br>HOLSTON MEDICAL GROUP, P.C.,<br>THOMAS VADAKEKARA THOMAS,<br>WELLMONT HEALTH SYSTEM d/b/a<br>WELLMONT HOLSTON VALLEY<br>MEDICAL CENTER,<br><br>Defendants. | Case No. 2:12-cv-182 |

## AMENDED COMPLAINT

1. Plaintiffs Bobby Duncan and Melissa Duncan are husband and wife residing in and citizens of Duffield, Scott County, Virginia.

2. Defendant Medical Education Assistance Corporation d/b/a ETSU Family Physicians of Kingsport d/b/a ETSU Family Medicine Service d/b/a ETSU Physicians & Associates d/b/a University Physicians Practice Group ("MEAC") is a Tennessee corporation with its principal office located and doing business in Kingsport, Tennessee and is responsible for the conduct of its partners, agents or employees under the doctrine of respondeat superior.

1

3.  Defendants Peter Rhea Bockhorst and Mark Kenneth Brummel are licensed physicians practicing medicine and treating patients from East Tennessee and Southwest Virginia at Wellmont Holston Valley Medical Center in Kingsport, Tennessee, are faculty members at ETSU Quillen College of Medicine and are partners, agents or employees of Medical Education Assistance Corporation.

Erin Harris and Beth Anne Fox are licensed physicians practicing medicine and treating patients from East Tennessee and Southwest Virginia at Wellmont Holston Valley Medical Center in Kingsport, Tennessee, are faculty members at ETSU Quillen College of Medicine and are partners, agents or employees of Medical Education Assistance Corporation.

4.  The East Tennessee State University (ETSU) Quillen College of Medicine was established pursuant to the Teague - Cranston Act. One of its goals, in addition ot training physicians generally, was to encourage physicians to enter into practice in rural areas of Tennessee. ETSU has the ability to pay its faculty physicians only a state-furnished base salary, an amount much lower than the salaries generally earned by similar physicians in private practice. ETSU depends upon the Medical Education Assistance Corporation (MEAC) to supplement that base salary in order to attract highly qualified faculty members. MEAC is non-profit, professional corporation affiliated with ETSU for the purposes of allowing physician faculty members to conduct a clinical practice in addition to their faculty duties and providing a means by which students in the College of Medicine and resident physicians can have valuable hands-on integral experience. Such an arrangement is known as a "faculty practice plan". <u>Medical Education Assistance Corporation v. State of Tennessee, through the East Tennessee State University Quillen College of Medicine v. Mehta</u>, 19 S.W.3d 803, 806 (Tenn. Ct. App 1999). (Exhibit 1) This is the reason for and purpose of Medical Education Assistance Corporation.

2

Medical Education Assistance Corporation received "(c)ollections from patient charges" totaling $37,282,087.00, made "(p)ayments to employees" totaling $23,739,879.00 and made "(p)ayments for benefits" totaling $2,341,174.00 for the year ending June 30, 2001. (Exhibit 2)

"ETSU Physicians and Associates Website" states that its physicians "... are unique in that <u>all are both practicing doctors *and* professors at the College of Medicine</u>". (Exhibits 3)

5. ETSU Physicians and Associates, Chief of Surgery Dr. William Browder gave the following testimony on September 8, 2011 during his discovery deposition in Washington County Law Court Case No. 25276:

> A. Yeah. ETSU Physicians and Associates is the practice plan group of full-time faculty of the College of Medicine.
>
> Q. Okay. Okay.
>
> A. So <u>if you're a full-time faculty member, you must practice through the practice plan, which is ETSU Physicians and Associates</u>. (Exhibit 4)

6. "ETSU Physicians and Associates Website" states the relationship of Medical Education Assistance Corporation with ETSU Physicians and Associates is "Medical Education Assistance Corporation a.k.a as ETSU Physicians and Associates". (Exhibit 5)

7. Medical Assistance Education Corporation a/k/a ETSU Physicians and Associates has various clinical affiliations that enable its faculty physicians to supplement their state-furnished base salary. "Family Medicine" is one of the various clinical affiliations and includes ETSU Family Physicians of Kingsport. Faculty physicians for ETSU Family Physicians of Kinsgport include Peter Bockhorst, Mark Brummel, Erin Harris and Beth Anne Fox. Peter Bockhorst is the Assistant Professor and Associate Medical Director / Kingsport. (Exhibit 6)

3

8. ETSU Physicians and Associates sent a bill for services to Bobby Duncan and Melissa Duncan for treatment provided to Bobby Duncan by ETSU Physicians and Associates faculty physicians Bockhorst, Brummel, Harris and Fox. (Exhibit 7)

This bill for services indicates that ETSU Physicians and Associates / "MEAC" billed and received payment for services provided by Dr. Bockhorst, Dr. Brummel, Dr. Harris and Dr. Fox. These services were provided or billed on February 12, 2011 (Dr. Bockhorst), February 13, 2011 (Dr. Bockhorst), February 14, 2011 (Dr. Brummel), February 15, 2011 (Dr. Harris), February 16, 2011 (Dr. Harris), February 17, 2011 (Dr. Harris), February 18, 2011 (Dr. Harris), February 19, 2011 (Dr. Harris), February 20, 2011 (Dr. Harris), February 21, 2011 (Dr. Harris) and February 22, 2011 (Dr. Fox). (Exhibit 7)

9. The ETSU Physicians and Associates / ETSU Family Medicine Service / "MEAC" attending physicians who participated in and were responsible for the care and treatment of Bobby Duncan were Dr. Peter Bockhorst, Dr. Mark Brummel, Dr. Erin Harris and Dr. Beth Fox.

10. The acts or omissions herein of Peter Rhea Bockhorst, Mark Kenneth Brummel, Erin Harris and Beth Anne Fox, who were agents or employees of MEAC a.k.a. ETSU Physicians and Associates, occurred while engaged in their clinical practice permitted to supplement their state-furnished base salary outside their role as employees of the State of Tennessee.

11. Defendant Surgical Associates of Kingsport, Inc. is a Tennessee corporation with its principal office located and doing business in Kingsport, Tennessee and is responsible for the conduct of its partners, agents or employees under the doctrine of respondeat superior.

12. Defendant Andrew Phillip Kramer is a licensed physician practicing medicine and treating patients from East Tennessee and Southwest Virginia at Wellmont Holston Valley Medical Center in Kingsport, Tennessee and is a partner, agent or employee of Surgical Associates of Kingsport, Inc.

4

13. Defendant Holston Medical Group, P.C. is a Tennessee corporation with its principal office located and doing business in Kingsport, Tennessee and is responsible for the conduct of its partners, agents or employees under the doctrine of respondeat superior.

14. Defendant Thomas Vadakekara Thomas is a licensed physician practicing medicine and treating patients from East Tennessee and Southwest Virginia at Wellmont Holston Valley Medical Center in Kingsport, Tennessee and is a partner, agent or employee of Holston Medical Group, P.C.

15. Defendant Wellmont Health System d/b/a Wellmont Holston Valley Medical Center is a Tennessee corporation with its principal office located and doing business in Kingsport, Tennessee and is responsible for its direct corporate negligence and is vicariously responsible for the acts or omissions of Dr. Bockhorst, Dr. Brummel, Dr. Harris, Dr. Fox, Dr. Kramer and Dr. Thomas under the doctrine of respondeat superior.

16. The transaction or occurrence out of which this action arises is the care and treatment that was or should have been provided by the Defendants to Bobby Duncan at Wellmont Holston Valley Medical Center in Kingsport, Tennessee.

17. Jurisdiction is proper pursuant to 28 U.S.C. §1332.

18. The Plaintiffs have complied with T.C.A. §29-26-121(a)(2). (Exhibit 8)

19. The Plaintiffs have complied with T.C.A. §29-26-121(a)(3)(B) and (4). (Exhibit 8)

20. The Plaintiffs have complied with T.C.A. §29-26-122(a). (Exhibit 9)

21. On February 10, 2011 at 1:30 a.m. Bobby Duncan was taken by ambulance to the Wellmont Holston Valley Medical Center emergency room. The medical chart states that Bobby Duncan was having symptoms that include: "abdominal pain with vomiting and bloody diarrhea" and "(a)abdominal pain - acute".

5

An ultrasound at 3:17 a.m. and CT at 4:00 a.m. were performed. The results of the ultrasound and CT include: "no biliary obstruction" (ultrasound) and "small bowel appears normal" (CT).

After being prescribed medications, at 6:35 a.m. Bobby Duncan was discharged and sent home from the emergency room.

22. On February 11, 2011 at 1:21 p.m. Bobby Duncan returned to the emergency room with the medical chart stating symptoms that include: "abdominal pain ... states here last night for same" and "abdominal pain - acute ... vomiting / diarrhea".

He was discharged again from the emergency room and at 5:05 p.m. sent home.

23. On February 11, 2011 (Friday) at 3:06 p.m. Bobby Duncan again returns to the emergency room with the medical chart stating symptoms this time that include: "abdominal pain, hematuria ... nausea, vomiting ... diarrhea with some blood in stool, no bowel movement since Wednesday ... continued worsening abdominal pain, nausea and vomiting".

Bobby Duncan's condition was worsening at this time.

24. On February 11, 2011 at 5:47 p.m. another CT of the abdomen is performed. The results of this CT include: "small bowel is mildly dilated ... no transition point is identified ... right colon is borderline distended with fluid ... colon decreases in caliber distally without a defined transition point or obstructing lesion ... pattern favors paralytic ileus over mechanical obstruction".

This CT confirms that Bobby Duncan's condition worsened since the CT and ultrasound that were performed on February 10, 2011.

The medical chart has no explanation for the "bloody diarrhea" that Bobby Duncan is having.

6

25. On February 11, 2011 at 9:15 p.m. the Progress Notes of Wellmont Holston Valley Medical Center include: "abdominal pain ... with nausea and vomiting, could be secondary to paralytic ileus seen on CT versus small bowel obstruction versus viral gastroenteritis or intra-abdominal infection ... will investigate the cause of ... ileus ... surgery consult if ... abdominal exam and / or ... patient appears to be worsening".

Bobby Duncan's condition was continuing to worsen.

26. The medical chart also includes: "Mr. Duncan was admitted to the ETSU Family Medicine Service on 02/11/2011 at 9:15 p.m. with a chief complaint of abdominal pain" and "(t)his case was discussed with Dr. Bockhorst and he agrees with the assessment and plan".

The cause of Bobby Duncan's symptoms had not been diagnosed when he was admitted to Wellmont Holston Valley Medical Center.

The standard of care requires that the most immediate or urgently dangerous life threatening condition be given priority with the differential diagnosis so the patient will not die or be seriously harmed.

Bobby Duncan was having signs and symptoms of mesenteric ischemia at this time, which includes abdominal pain, nausea, vomiting and ileus.

Dr. Bockhorst did not request an immediate surgical consult when Bobby Duncan was admitted as a patient to Wellmont Holston Valley Medical Center or did he ask the radiologist to rule in mesenteric ischemia.

27. If Dr. Bockhorst asked the radiologist to rule in mesenteric ischemia as a possible cause of Bobby Duncan's symptoms on February 11, 2011 when Bobby Duncan was admitted to Wellmont Holston Valley Medical Center, and thereafter, mesenteric ischemia would have been found and treated by anticoagulants, interventional radiology or surgery.

7

28. If Dr. Bockhorst asked a surgeon to evaluate the CT taken on February 10, 2011, CT taken on February 11, 2011, symptoms and other clinical findings when Bobby Duncan was admitted to Wellmont Holston Valley Medical Center on February 11, 2011, mesenteric ishchemia would have been found and treated by anticoagulants, interventional radiology or surgery, after Dr. Bockhorst, an interventional radiologist and surgeon consulted to develop an appropriate treatment plan.

29. Because mesenteric ischemia was not ruled in and given top priority with the differential diagnosis when Bobby Duncan was admitted to Wellmont Holston Valley Medical Center, and thereafter, Bobby Duncan's condition progressively worsened and deteriorated, thus requiring more extensive treatment resulting in unnecessary, significant and devastating permanent harm.

30. Each time Bobby Duncan went to Wellmont Holston Valley Medical Center, was seen in the emergency room and admitted as a patient, Bobby Duncan went to Wellmont Holston Valley Medical Center because Wellmont Health System / Wellmont Holston Valley Medical Center held itself out to the public as providing medical services, he looked to and relied on Wellmont Holston Valley Medical Center to provide medical treatment for him and accepted medical treatment with a reasonable belief that the medical treatment would be provided by the hospital or a hospital employee. Bobby Duncan went to Wellmont Holston Valley Medical Center not to be seen by any particular physician or health care provider, but relied on Wellmont Holston Valley Medical Center for the purpose of receiving appropriate medical care. Therefore, Dr. Bockhorst, Dr. Brummel, Dr. Harris, Dr. Fox, Dr. Kramer and Dr. Thomas are agents or servants of Wellmont Health System / Wellmont Holston Valley Medical Center.

8

31. When he was admitted to Holston Valley Medical Center as a patient, Bobby Duncan was entitled to the attention expected from under the circumstances of a reasonable hospital. This required Wellmont Holston Valley Medical Center to have a policy, and communicate and enforce that policy, for its medical staff, of which Dr. Bockhorst, Dr. Brummel, Dr. Harris and Dr. Fox are members of, to personally conduct a physical examination of Bobby Duncan to assess him periodically and within a reasonable time after he was admitted to Wellmont Holston Valley Medical Center. It appears this was not done.

The primary attending physician responsible for managing and coordinating the care and treatment of Bobby Duncan appears to be Dr. Peter Bockhorst.

32. On February 13, 2011 at 7:09 a.m. after a gastrointestinal consult the following is put in the medical chart: "sudden onset of abdominal pain, nausea, vomiting, diarrhea with no bowel movement and picture of partial bowel obstruction ... etiology could be related to infection or inflammatory cause ... cannot r/o ... ischemic colitis".

33. Ischemia is a decrease in the blood supply to a body organ, tissue or body part caused by a constriction or obstruction of the blood supply which can be fatal or cause serious harm if not treated.

34. On February 13, 2011 at 10:18 a.m. an x-ray of the abdomen was performed. The results of this x-ray include: "ABNORMAL REPORT, PLEASE REVEIW IMMEDIATELY" and "(e)vidence of small bowel obstruction and small bowel edema".

This x-ray shows that Bobby Duncan's condition was continuing to worsen.

The Defendants have not diagnosed the cause of Bobby Duncan's symptoms.

35. On February 13, 2011 at 10:57 a.m. surgeon Dr. Andrew Kramer evaluated Bobby Duncan and put the following in the medical chart: "sharp stabbing pain in epigastric area ... shifted to left lower quadrant ... diarrhea and loose bowel movements ... with 'tinge' of blood ...

9

dark urine ... 53 year old gentleman with nausea, vomiting, and abdominal pain, and picture suggestive of paralytic ileus on CT scan ... does not show any signs or symptoms of acute abdomen or acute surgical issues ... will most likely benefit from conservative management at this time".

Abdominal pain, nausea, vomiting and ileus are signs and symptoms of mesenteric ischemia and the same signs and symptoms that Dr. Thomas recognized on February 24, 2011 when he suspected mesenteric ischemia as the cause of Bobby Duncan's symptoms.

36. On February 14, 2011 at 6:35 a.m. another CT of the abdomen was performed. The results of this CT include: "dilation of ... proximally small intestine which gradually tapers distally to ... ileocecal bowel ... gas is present in ... colon to the descending colon ... pattern favors paralytic ileus over mechanical obstruction ... findings are similar to the study of 02/11/11, except there is some increase in mesenteric edema".

Bobby Duncan's condition was continuing to worsen.

37. On February 15, 2011 at 7:30 a.m. the Progress Notes include: "abdominal pain / distention due to paralytic ileus vs. sbo vs. infection ... sepsis due to GI infection ... CT reported ileus - diffuse sb mesenteric edema but not specific".

Sepsis is a potentially deadly condition in which the bloodstream is overwhelmed by bacteria.

The Defendants or their partners, agents or employees have not diagnosed the cause of Bobby Duncan's symptoms.

38. On February 16, 2011 at 1:32 a.m. after an infectious disease consultation the medical chart includes: "leukocytosis has worsened since admission on 2/12 ... consulted for further antibiotic recommendation ... infectious versus inflammatory partial bowel obstruction / paralytic ileus ... high fever / leukocytosis of questionable etiology".

10

Bobby Duncan's condition was continuing to worsen.

The Defendants or their partners, agents or employees have not diagnosed the cause of Bobby Duncan's symptoms.

39. On February 16, 2011 at 5:30 a.m. the Progress Notes include: "Concerned about patient not improving, placed call to radiologist ... to review ... CT yesterday at 4:10P, on review, he is of the opinion there are changes compared to prior CT, but most concerning is the mesenteric edema, suggest surgery to review ... call placed to surgical resident supervised by Dr. Kramer ... at 04:57. Promised to bring this to Dr. Kramer's attention".

The resident supervised by Dr. Kramer brought it to Dr. Kramer's attention the concern of Bobby Duncan not improving and mesenteric edema.

The Defendants or their partners, agents or employees have not diagnosed the cause of Bobby Duncan's symptoms.

40. On February 16, 2011 at 7:40 a.m. after the resident did "bring this" concern of not improving and mesenteric edema to the attention of Dr. Kramer, the following is put in the medical chart by Dr. Kramer: "... increased edema on CT ... identified and discussed at time of CT ... please refer to my note of 2/15 ... there was no need to 'bring this' to my attention".

Dr. Kramer does not know what is causing Bobby Duncan's symptoms.

41. On February 22, 2011 at 10:15 a.m. another CT of the abdomen is performed. The results of this CT are : "very abnormal dilation of the stomach, duodenum and jejunum worsening ... main differential includes infection and ischemia".

Bobby Duncan's condition is continuing to worsen.

The Defendants or their partners, agents or employees have not diagnosed the cause of Bobby Duncan's symptoms.

11

42. Wellmont Holston Valley Medical Center requested on February 23, 2011 that Bobby Duncan be included in a "research study" (which Bobby Duncan does not remember because of his condition). The criteria for being included in this "research study" is: "... you have a central systemic line access (PICC line), you have been prescribed the IV antibiotic vancomycin during your hospital stay and your lab values and drug dosing are being monitored by the hospital pharmacy".

It is not yet known who was paid for this research study and who payment was made by. Vancomycin is an antibiotic used to treat clostridium difficile colitis (c. difficile).

43. On February 23, 2011 the Progress Notes include: "ileus is not treated surgically at this time ... if he progresses to obstruction or toxic ... that would require intervention".

The Defendants or their partners, agents or employees have not diagnosed the cause Bobby Duncan's symptoms.

44. On February 24, 2011 after a surgical evaluation by Dr. Thomas Thomas, the following is put in the medical chart by Dr. Thomas: "abdominal pain, nausea, vomiting and ileus ... will contact the radiologist to see if there is any sign of mesenteric venous thrombosis since this could provide the sort of picture".

Dr. Thomas suspected mesenteric ischemia as the cause of Bobby Duncan's symptoms. Mesenteric ischemia is a life threatening condition that if not ruled out or treated, can cause death or serious injury. Dr. Thomas did not follow up with the radiologist as he said he was going to do to find out if Bobby Duncan had mesenteric ischemia.

45. On February 25, 2011 at 2:40 p.m. the Progress Notes include: "... abd - soft but distended ... (d)oing better apparently" and "(n)o surgical abdomen at this time".

46. On February 26, 2011 primary attending physician Dr. Bockhorst put the following in the medical chart: "(p)hysical exam confirmed by me" and "(a)bberant motility in setting of c-diff, still possible underlying chronic cause".

The Defendants or their partners, agents or employees have not diagnosed the cause Bobby Duncan's symptoms.

47. On February 28, 2011 at 2:10 p.m. the following is included by Dr. Thomas in the medical chart: "... good BM's ... HR 112 ... abd distended still but minimally tender ... WBC 11k ... C Diff enteritis ... will sign off ... no surgical intervention needed at this time ...".

48. Bobby Duncan was discharged from Wellmont Holston Valley Medical Center on March 2, 2011.

49. The Discharge Summary on March 2, 2011 includes the following: "PRIMARY DIAGNOSIS: Include Clostridum difficile colitis, abdominal pain, nausea, vomiting ..." and "IMAGING: Imaging that was done includes chest x-ray ... EGD ... echocardiogram ... flexible sigmoidoscopy ...".

The Discharge Summary does not mention anything about the CT done on February 10, 11, 14 and 22 or the x-ray done on February 13, 2011.

Also, there is nothing mentioned in the Discharge Summary or anywhere in the medical chart about Dr. Thomas checking with the radiologist to see if there was any sign of mesenteric ischemia (mesenteric venous thrombosis) as Dr. Thomas says he was going to do on February 24, 2011.

50. On March 3, 2011 around midnight, Bobby Duncan returned to the Wellmont Holston Valley Medical Center emergency room. A CT of the abdomen performed at that time includes findings as follows: "Partial thrombosis of the superior mesenteric vein associated with increased distention and possible focal perforation of the small bowel".

51. Surgery was performed on March 4, 2011 as follows: "1. Excision of the entire small bowel except for the first 80 cm" and "2. Excision of right colon to midtransverse colon" and "3. Jejunostomy".

52. The Defendants or their partners, agents or employees violated the standard of care by, including as follows:

### Dr. Bockhorst

a. not conducting a timely physical examination to assess Bobby Duncan's signs and symptoms of mesenteric ischemia and worsening condition after he was admitted to Wellmont Holston Valley Medical Center as a patient and not conducting periodic examinations thereafter;

b. not developing an aggressive plan to evaluate the probability that Bobby Duncan had mesenteric ischemia given his symptoms of mesenteric ischemia and worsening condition;

c. not consulting with a radiologist on February 11, 2011 and thereafter to rule in mesenteric ischemia as a possible cause of the symptoms and worsening condition of Bobby Duncan after he was admitted to Wellmont Holston Valley Medical Center as a patient;

d. not consulting with a surgeon on February 11, 2011 and thereafter to rule in mesenteric ischemia as a possible cause of the symptoms and worsening condition of Bobby Duncan after he was admitted to Wellmont Holston Valley Medical Center as a patient;

e. not consulting with Dr. Brummel, Dr. Harris and Dr. Fox to develop an aggressive plan to evaluate the probability that Bobby Duncan had mesenteric ischemia given his symptoms of mesenteric ischemia and worsening condition;

f. not consulting with Dr. Brummel, Dr. Harris and Dr. Fox to assess the appropriateness of discharging Bobby Duncan;

g. not consulting with a surgeon who would take an active aggressive role to diagnose and treat Bobby Duncan's symptoms of mesenteric ischemia when it was apparent that Dr. Kramer was not;

h. not including and giving mesenteric ischemia top priority on the differential diagnosis list of possible causes given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

I. not discussing all treatment options with Bobby Duncan and his family, including exploratory surgery and interventional radiology, given his symptoms of mesenteric ischemia and worsening condition;

j. not reviewing the medical chart before discharging Bobby Duncan to assess the appropriateness of discharge given that mesenteric ischemia was suspected by Dr. Thomas and not followed up with.

### Dr. Brummel, Dr. Harris and Dr. Fox

a. not including and giving mesenteric ischemia top priority on the differential diagnosis list of possible causes given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

b. not consulting with Dr. Bockhorst and each other to develop an aggressive plan to evaluate the probability that Bobby Duncan had mesenteric ischemia given his symptoms and worsening condition;

c. not consulting with a radiologist to rule in mesenteric ischemia as a possible cause of the symptoms and worsening condition of Bobby Duncan;

d. not consulting with each other and Dr. Bockhorst to assess the appropriateness of discharging Bobby Duncan;

e. not discussing all treatment options with Bobby Duncan and his family, including exploratory surgery and interventional radiology, given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

f.  not reviewing the medical chart before discharging Bobby Duncan to assess the appropriateness of discharge given that mesenteric ischemia was suspected by Dr. Thomas and not followed up with.

### Dr. Kramer

a.  not including and giving mesenteric ischemia top priority with a differential diagnosis list of possible causes given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

b.  not consulting with a radiologist on February 13, 2011 and thereafter to rule in mesenteric ischemia as a possible cause of the symptoms and worsening condition of Bobby Duncan;

c.  not discussing all treatment options with Bobby Duncan and his family, including exploratory surgery and interventional radiology, given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

### Dr. Thomas

a.  not including and giving mesenteric ischemia top priority with a differential diagnosis list of possible causes given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

b.  not consulting with a radiologist on February 24, 2011 and thereafter to rule in mesenteric ischemia as a possible cause of the symptoms and worsening condition of Bobby Duncan;

c.  not consulting with a radiologist and the attending physician to determine an appropriate treatment plan for Bobby Duncan given his symptoms and worsening condition;

d.  not discussing all treatment options with Bobby Duncan and his family, including exploratory surgery and interventional radiology, given Bobby Duncan's symptoms of mesenteric ischemia and worsening condition;

Wellmont Holston Valley Medical Center

    a.    not enforcing, communicating or having a policy or procedure that requires an attending physician to personally conduct a physical examination of their patient within a reasonable time after being admitted as a patient to assess signs and symptoms to develop an appropriate treatment plan.

53. These standard of care deviations have resulted in among other things, the following:

    a.    extensive bowel resection;

    b.    reduced life expectancy;

    c.    reduced quality of life;

    d.    septic cardiomyopathy;

    e.    disqualification as candidate for bowel transplant;

    f.    congestive heart failure;

    g.    risk of sudden death secondary to ventricular arrhythmia;

    h.    risk of clotting recurrence;

    I.    compromised absorption;

    j.    unpredictable absorption rates.

54. Damages have resulted to Bobby Duncan from these standard of care deviations, including as follows:

    a.    medical bills (past and future);

    b.    lost income, lost earning capacity and loss of household services;

    c.    physical pain and suffering (past and future);

    d.    mental pain and suffering (past and future);

    e.    permanent injury (past and future);

    f.    disfigurement (past and future);

    g.    loss of enjoyment of life (past and future).

55. Although she will always love and care for her husband, these deviations from the standard of care have resulted in Melissa Duncan losing services, care and consortium of her husband.

56. Defendant Medical Education Assistance Corporation d/b/a ETSU Family Physicians of Kingsport d/b/a ETSU Family Medicine Service d/b/a ETSU Physicians & Associates d/b/a University Physicians Practice Group is responsible for the conduct of its partners, agents or employees, Peter Rhea Bockhorst, Mark Kenneth Brummel, Erin Harris and Beth Fox, under the doctrine of respondeat superior.

57. Defendant Surgical Associates of Kingsport, Inc. is responsible for the conduct of its partners, agents or employees, Andrew Phillip Kramer, under the doctrine of respondeat superior.

58. Defendant Holston Medical Group, P.C. is responsible for the conduct of its partners, agents or employees, Thomas Vadakekara Thomas, under the doctrine of respondeat superior.

59. Defendant Wellmont Health System d/b/a Wellmont Holston Valley Medical Center is responsible for its direct corporate negligence and for the conduct of all Defendants under the doctrine of vicarious liability.

**WHEREFORE**, the Plaintiffs request from the Defendants:

a. trial by jury;

b. compensatory damages in an amount determined by the jury not to exceed seventy-five million dollars ($75,000,000.00);

c. costs;

d. any other appropriate relief.

Respectfully submitted,

s/ Larry V. Roberts
LARRY V. ROBERTS (BPR# 015873)
Attorney for Plaintiffs
The Roberts Law Firm
106 Pinnacle Drive, Suite 108
Johnson City, TN 37615

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2012, a copy of the foregoing Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

John S. Howard, Registered
Agent for Wellmont Health System
1905 American Way
Kingsport, TN 37660-5882 USA

Mark Kenneth Brummel
c/o ETSU Family Physicians of Kingsport
201 Cassel Drive
Kingsport, TN 37660

Scott R. Fowlers, M.D. Registered Agent
for Holston Medical Group P.C.
2323 N. John B. Dennis Hwy.
Kingsport, TN 37660-4771 USA

G. Daniel Goinzalez, M.D.
Registered Agent for Surgical Associates
of Kingsport, Inc.
914 Broad St. Ste 2A
Kingsport, TN 37660-3817 USA

Peter Rhea Bockhorst
c/o ETSU Family Physicians of Kingsport
201 Cassel Drive
Kingsport, TN 37660

Phillip Andrew Kramer
Surgical Associates of Kingsport, Inc.
914 Broad St. STE 2A
Kingsport, TN 37660-3817 USA

Thomas Vadakekar Thomas
Holston Medical Group
105 W. Stone Dr Ste 4A
Kingsport, TN 37660

Russell Lewis, Registered Agent for
Medical Education Assistance Corporation
222 E. Main Street
Johnson City, TN 37604-5708 USA

s/ Larry V. Roberts
LARRY V. ROBERTS (BPR# 015873)
Attorney for Plaintiffs
The Roberts Law Firm
106 Pinnacle Drive, Suite 108
Johnson City, TN 37615