UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


BOBBY DUNCAN and                        )
MELISSA DUNCAN,                         )
husband and wife,                       )
                    Plaintiffs,         )
                                        )
v.                                      )          NO. 2:12-CV-182
                                        )
MEDICAL EDUCATION ASSISTANCE,           )
CORPORATION, d/b/a ETSU FAMILY          )
PHYSICIANS OF KINGSPORT, d/b/a          )
ETSU FAMILY MEDICINE SERVICE,           )
d/b/a ETSU PHYSICIANS &                 )
ASSOCIATES, d/b/a UNIVERSITY            )
PHYSICIANS PRACTICE GROUP,              )
PETER RHEA BOCKHORST, MARK              )
KENNETH BRUMMEL SURGICAL                )
ASSOCIATES OF KINGSPORT, INC.,          )
ANDREW PHILLIP KRAMER,                  )
HOLSTON MEDICAL GROUP, P.C.,            )
THOMAS VADAKEKARA THOMAS,               )
and WELMONT HEALTH SYSTEM               )
d/b/a HOLSTON VALLEY MEDICAL            )
CENTER,                                 )
                    Defendants.         )


## MEMORANDUM OPINION AND ORDER

This is a medical malpractice action brought pursuant to Tennessee state law. The Court's

jurisdiction is invoked pursuant to 28 U.S.C. § 1332. Numerous motions are pending before the

Court; all have been responded to, or the time has passed for response; and the motions are ripe for

disposition:

(1) Motion for Summary Judgment by Drs. Peter Bockhorst ("Bockhorst") and Mark

Brummel ("Brummel"), [Doc. 16]; response, [Doc. 30]; and reply, [Doc. 41];

(2) Motion to dismiss by Andrew P. Kramer, D.O. ("Kramer") and Surgical Associates of Kingsport, Inc. ("SAK"), [Doc. 29]; response, [Doc. 38]; reply, [Doc. 46]; amended response,[Doc. 55]; and reply to amended response, [Doc. 56];

(3) Motion for Summary Judgment by Medical Education Assistance Corporation ("MEAC"),    [Doc. 42]; response, [Doc. 58];

(4) Motion to defer ruling on motion to dismiss by Kramer and SAK and to certify questions to the Tennessee Supreme Court, [Doc. 49]; and

(5) Motion for voluntary dismissal without prejudice, [Doc. 63], and amended motion for voluntary dismissal without prejudice, [Doc. 64]; response (Bockhorst and Brummel), [Doc. 65]; reply, [Doc. 66]; supplemental brief in support, [Doc. 67]; response (MEAC), [Doc. 69]; and response (Kramer and SAK), [Doc. 70].

The Court will address each motion in turn, although not in the order listed above.

## I.    Motion/Amended Motion to Dismiss Without Prejudice

Plaintiffs seek to voluntarily dismiss their complaint without prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure to allow them to re-file their complaint and to "cure" alleged deficiencies in their notice given pursuant to Tennessee Code Annotated § 29-26-121, which are the basis of SAK's and Kramer's motion to dismiss, [Doc. 29].[1]   Plaintiffs allege that Tennessee law allows them to cure alleged insufficient compliance with § 29-26-121 by taking a voluntary dismissal without prejudice and then refiling the case, citing *Robles v. Vanderbilt University Medical Center*, 2011 WL 1532069 (Tenn. Ct. App. 2011) and *Jenkins v. Marvel*, 683 F.Supp.2d 626 (E.D. Tenn. 2010).  Plaintiffs argue that defendants would not be prejudiced by a voluntary dismissal since all pending motions could be decided in the re-filed action.

As noted above, defendants Bockhorst, Brummel, MEAC, SAK and Kramer all oppose

---

[1]  As more fully discussed below, plaintiffs disagree with Kramer and SAK that any violation of § 29-26-121 has occurred and strongly oppose the motion to dismiss.

2

plaintiffs' motions. Bockhorst and Brummel note that plaintiffs need court approval for the voluntary dismissal since their motion for summary judgment is pending, seek immediate disposition of their motion, and ask the Court to rule on their pending motion before addressing the motion for voluntary dismissal. MEAC takes the same position. Kramer and SAK oppose the motion on the basis "that the case law is clear that a failure to comply with the notice requirement of Tenn. Code Ann. § 29-26-121" cannot be cured and the complaint must be dismissed with prejudice, citing *DePue v. Schroeder*, 2011 WL 538865 (Tenn. Ct. App., Feb. 15, 2011). Plaintiffs reply that it "only makes sense" for the motion for summary judgment filed by Bockhorst and Brummel to be decided in the refiled action "so there will be only one action from which all appeals (if any) would be taken . . ." Plaintiffs further argue that voluntary dismissal will benefit all parties because "(1) the case will no longer be on the court's heavy docket, (2) the court will not have to deal with the pending motions or any appealable issues, all of which are based on state law and can be dealt with by the state court, (3) all effort and cost expended thus far by the parties is for issues that can be dealt with by the state court, and (4) the case will move faster in state court so Mr. Duncan will hopefully be alive to see the case to its conclusion." [Doc. 67-1 at 1].

Plaintiffs seek to voluntarily dismiss their complaint pursuant to Federal Rule of Civil Procedure 41(a)(2) which requires a plaintiff to seek an order of the court or stipulation of the parties to voluntarily dismiss an action against a party who has filed an answer or motion for summary judgment. The court may grant the request for voluntary dismissal "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The decision whether to dismiss a complaint under Rule 41(a)(2) lies within the sound discretion of the court. *Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974). An "abuse of discretion is found only where the defendant would suffer

3

'plain legal prejudice' as a result of a dismissal without prejudice." *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (citation omitted). "The purpose of Rule 41(a)(2) is to protect the nonmovant . . . from unfair treatment." *Id.* (citing *Grover by Grover v. Eli Lilly and Company*, 33 F.3d 716, 718 (6th Cir. 1994)). To protect the interest of the nonmoving party, the court considers "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.*

Based on the Court's review of the motion and amended motion and the factors set out above, the Court declines the plaintiffs' request to voluntarily dismiss their complaint so that the complaint can be refiled in state court and the alleged deficiencies in the § 121 notice cured. First of all, the benefits to this Court and the parties related to the Court's docket and the need for the Court to expend time and commit resources to the resolution of this case simply do not justify the relief requested. In addition, while the case might in fact proceed at a faster pace in the state court and the state court is completely capable of dealing with the pending motions, no defendant suggests that any defendant will benefit from the transfer of the case from federal to state court. In fact, three of the defendants are ***insisting*** that this court resolve the pending motions for summary judgment and further delay in deciding those motions will inevitably require more time and expense to the parties. Finally, plaintiffs have, as noted above, invoked the Court's jurisdiction based on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332. The refiling of this case in state court does not assure that it would remain in state court as defendants would be able to remove it to this Court. See 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the

4

district courts of the United States have original jurisdiction, may be removed . . .").

Secondly, this Court is not convinced that any deficiencies in the § 121 notice can in fact be cured with a voluntary dismissal and refiling of the case. The *Robles* decision of the Tennessee Court of Appeals relied on by plaintiffs was decided on April 19, 2011. *Robles*, 2011 WL 1532069. The *Jenkins* decision of this Court was decided even earlier by Judge Mattice. Although this Court finds the reasoning and logic of both decisions to be persuasive, both were decided before the recent decision of the Tennessee Supreme Court in *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300 (Tenn. 2012). In *Myers*, decided October 4, 2012, the Supreme Court held that the language of Tennessee Code Annotated § 29-26-121, providing that any person asserting a medical malpractice claim "shall" give sixty (60) days pre-suit notice to the defendant is mandatory, not directory, and that strict, rather than substantial, compliance is required. *Id.* at 310. The Court further held that failure to comply with requirements that are "precisely stated" requires dismissal with prejudice. *Id.* at 310-11.[2]

Although the Supreme Court did not explicitly overrule *Robles* or the reasoning of *Jenkins*, it did affirm the decision of the Court of Appeals which had severely limited *Jenkins* to its specific facts, distinguishing the cases on the basis that *Jenkins* dealt with a situation where plaintiff's original suit had been voluntarily dismissed before the effective date of § 29-26-122 and "re-filed only days after the notice provisions went into effect in 2008." *Myers v. AMISUB(SFH), Inc.* 2011

---

[2] In *Myers*, the Supreme Court specifically decided that a failure to comply with Tennessee Code Annotated § 29-26-122 requires dismissal with prejudice. Tennessee Code Annotated § 29-26-122(c) provides that "[t]he failure of plaintiff to file a certificate of good faith in compliance with this section, shall, upon motion, make the action subject to dismissal." Tennessee Code Annotated § 29-26-121 does not contain the same provisions, however, it does contain the same mandatory language as § 122, *i.e.* "shall," and § 121 provides that compliance may be excused "only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b). The Supreme Court did "not address the appropriate sanctions" for failure to comply with section 121. *Myers*, 382 S.W.2d at 312.

WL 664753 at *8 (Tenn. Ct. App. Feb. 4, 2011). The statement of the Court of Appeals in *Robles* that the "dismissal of the action with prejudice based on the fact that the certificate was not filed with the complaint is not automatic," *Robles*, 2011 WL 1532069 at *3, does, however, appear to be directly at odds with the *Myers* holding, except where extraordinary cause is shown for the failure to do so.

Furthermore, the Supreme Court noted that "[t]he essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed." *Myers*, 382 S.W.3d at 309. A panel of the Tennessee Court of Appeals has subsequently applied this language from *Myers* to find that timing mandatory and that the statute "does not authorize a plaintiff to cure deficiencies by filing an amended complaint." [3] *Vaughn v. Mountain States Health Alliance*, 2013 WL 817032, *6 (Tenn. Ct. App. March 5, 2013). The same rationale applies to a complaint refiled after a voluntary dismissal. In other words, the Court concludes that plaintiffs are likely stuck with what they file, or fail to file, with their original complaint. Under these circumstances, voluntary dismissal of plaintiffs' complaint would not be appropriate and the motions for voluntary dismissal without prejudice, [Docs. 63, 64], are DENIED.

## II.    Motion to Defer Ruling and Certify Questions to Tennessee Supreme Court

Defendants SAK and Kramer have moved to dismiss plaintiffs' complaint against them for failure to comply with Tennessee Code Annotated § 29-26-121 in three particulars: (1) Plaintiffs failed to file a certificate of mailing as required by Tennessee Code Annotated § 29-26-121(a)(4); (2) plaintiffs failed to include Mr. Duncan's date of birth on the notices as required by § 20-26-

---

[3] The *Myers* court also noted the mandatory nature of the statute's deadlines, referring to the "legislative discussion of the statutes prior to their enactment." *Myers*, 382 S.W.3d at 309, n.8.

6

121(a)(2)(A); and (3) plaintiffs submitted medical authorizations that are not HIPAA compliant as required by § 29-26-121(a)(2)(E) because the authorizations submitted were "compound authorizations" prohibited by 45 CFR § 164.508(b)(3). Plaintiffs now ask the Court to defer ruling on SAK's and Kramer's motion and "that the issues subject of the Motion To Dismiss" filed by Kramer and SAK "be certified to the Supreme Court of the State of Tennessee pursuant to Rule 23 of the Rules of the Supreme Court of Tennessee on grounds there are questions of substantive law which will be determinative of the cause and it appears there is no controlling precedent in the decisions of the Supreme Court of Tennessee on these issues." [Doc. 49]. No defendant has responded to this motion.

Rule 23 of the Rules of the Supreme Court provide that "[t]he Supreme Court may, at its discretion, answer questions of law certified by . . . a district court of the United States in Tennessee . . . when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. The Supreme Court may decline to answer any or all of the questions certified to it. *Id*., § 9.

This motion will be DENIED for several reasons. First, plaintiffs have not submitted a brief setting forth "the factual and legal grounds which justify the ruling sought from the Court" with the motion. See E.D. Tenn. LR 17.1(a) and (b). Second, the questions raised are not necessarily determinative of the cause because the motion to dismiss has been made on behalf of only two of the numerous parties, Kramer and SAK, and no other defendant has joined the motion. Third, one of the issues raised by the motion raises not a question of interpretation of Tennessee state law but

rather of the Code of Federal Regulations, a matter of federal law. Finally, these are not the substantial types of questions that should be certified to the state's highest court and, in this Court's view, would likely result in the Supreme Court declining to answer the certified questions.

### III. Motions For Summary Judgment by Doctors Bockhorst and Brummel, and MEAC

#### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of

8

its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### B. The Motion of Doctors Bockhorst and Brummel

The amended complaint alleges that Bockhorst and Brummel "are licensed physicians practicing medicine and treating patients from East Tennessee and Southwest Virginia at Wellmont Holston Valley Medical Center in Kingsport, Tennessee, are faculty members at ETSU Quillen College of Medicine and are partners, agents or employees of Medical Education Assistance Corporation." [Doc. 11, at ¶ 3].[4] ETSU pays its faculty physicians "only a state-furnished base salary", an amount lower than salaries earned by physicians in private practice. [*Id.*, at ¶ 4]. Salaries for these faculty physicians are supplanted by MEAC through a "faculty practice plan." [*Id.*]. The

---

[4] The amended complaint makes the same allegations about Erin Harris and Beth Anne Fox and also alleges acts of malpractice by Harris and Fox. Harris and Fox, however, are not named as defendants in the amended complaint.

9

website for ETSU Physicians and Associates states that its physicians are "both practicing doctors and professors at the College of Medicine." [*Id*.] The website further states that MEAC is also known as ETSU Physicians and Associates. [*Id*. at ¶ 6]. Plaintiffs allege that the acts of malpractice complained of occurred of during Bockhorst's and Brummel's clinical practice while supplementing their salaries through MEAC.

State officials and employees enjoy absolute immunity "for acts or omissions within the scope of the officer's or employee's office or employment." Tenn. Code Ann. § 9-8-307(h). A state employee is "any person who is employed in the service of and whose compensation is payable by the state[.]" Tenn. Code Ann. § 8-42-101(3). Bockhorst and Brummel have each submitted affidavits that they were Assistant Professors at the ETSU College of Medicine and were paid exclusively by the State of Tennessee. [Doc.16-1, 2 at ¶¶ 2, 5]. Neither is a partner, agent or employee of MEAC, [*Id*. at ¶¶ 6]. The alleged acts or omissions complained of in the amended complaint all occurred within the scope of their employment for the State. [*Id.* at ¶ 4].

Also submitted with the reply of Bockhorst and Brummel to the plaintiffs' response to the motion for summary judgment is the affidavit of Gregory L. Wilgocki, Executive Associate Dean/Associate Vice President For Finance and Administration, Division of Health Sciences, Quillen College of Medicine. [Doc. 41-1 at ¶ 1]. He also monitors the financial and administrative activities of the Family Medicine Residency Program. [*Id*.]. According to the affidavit, doctors Bockhorst and Brummel are faculty physicians for the Department of Family Medicine, paid exclusively by the State of Tennessee, and conduct their clinical activities through the Family Medicine Residency Program. [*Id.* at ¶¶ 3-4]. One of the residency sites for the program is ETSU Family Physicians of Kingsport, which is owned and operated by the State of Tennessee. [*Id*. at ¶

10

4].  MEAC, a non-profit, professional corporation, does business with ETSU under the name ETSU

Physicians and Associates.  MEAC provides contract billing for the Family Medicine Residency

Program, that is, it submits claims to insurance companies and bills to individual patients for

services rendered by the physicians with the Family Medicine Residency Program. [*Id*. at ¶¶ 5-6].

In addition to its contract with the Family Medicine Residency Program, MEAC has professional

service agreements with some physicians of ETSU College of Medicine to engage in the private

practice of medicine.  Bockhorst and Brummel, however, and all other faculty physicians in the

Family Medicine Residency Program, were not permitted to engage in the private practice of

medicine. [*Id.* at ¶ 7].

     Plaintiffs respond that there is a genuine dispute of material fact, *i.e*., whether

"Bockhorst and Brummel were agents or employees of Medical Education Assistance Corporation

or whether they were state employees, when they provided medical treatment to Plaintiff Billy

Duncan." [Doc. 30 at 1].  They further claim they should be entitled to discovery pursuant to Rule

56(d) of the Federal Rules of Civil Procedure.  In support of their argument that there exist genuine

issues of material fact, plaintiffs rely on the following:

- A description of the "faculty practice plan" at ETSU Quillen College of Medicine through which the University allows faculty physicians to supplement their salaries through MEAC (from a Tennessee Court of Appeals opinion);

- An admission by MEAC in state court litigation that "Dr. Cobble (not a defendant in this lawsuit) . . . was an agent and employee of Medical Education Assistance Corporation d/b/a ETSU Physicians & Associates;"

- Public statements by MEAC and ETSU Physicians & Associates that their relationship is "Medical Education Assistance Corporation a/k/a ETSU Physicians and Associates;"

- The listing of Bockhorst and Brummel as faculty physicians, along with Dr. Cobble, referred to above, in the "Physicians Directory" of the ETSU Physicians &

11

Associates website;

- The same website lists fifteen (15) different "Departments and Services," including "Family Medicine" and "ETSU Family Physicians of Kingsport;"

- ETSU Physicians & Associates sent a bill addressed to Melissa Duncan dated August 2, 2011, for treatment provided to Bobby Duncan by Bockhorst and Brummel;

- ETSU Physicians & Associates sent a summary of charges dated April 24, 2012;

- The statements by Bockhorst and Brummel in their affidavits that they were "paid exclusively by the State of Tennessee through the ETSU Family Physicians of Kingsport" is not supported by documentation;

- ETSU Physicians & Associates billed for medical treatment provided by several doctors, including Bockhorst and Brummel, during the period February 11, 2011 through March 2, 2011;

- ETSU Physicians & Associates publicly represents that its physicians "are both practicing doctors and professors at the College of Medicine;"

- Testimony by the Chair of the Department for Surgery at Quillen College of Medicine in a discovery deposition in state court litigation that "ETSU Physicians and Associates is the practice planning group of full-time faculty of the College of Medicine" and "if you're a full-time faculty member, you must practice through the practice plan, which is ETSU Physicians and Associates."

Plaintiffs argue that the statements made by Bockhorst and Brummel in their affidavits are conclusory and that questions of whether Bockhorst and Brummel are employees of the State of Tennessee, their method of payment, and whether the acts and omissions alleged were within the scope of their employment are all factual issues to be decided by a jury. The Court disagrees. Plaintiffs' position represents a fundamental misunderstanding of the role of summary judgment motions. When a properly supported motion for summary judgment is filed, plaintiffs must respond with evidence that creates a genuine issue of material fact. Fed. R. Civ. P. 56(c).

As defendants argue, the key consideration in applying Tennessee Code Annotated

12

§ 9-8-307(h) is, given the plain language of the statute, whether the medical professional's salary is paid by the State of Tennessee. *See Richardson v. Dugdale*, 2006 WL 889382 (W.D. Tenn. March 30, 2006); *Thompson v. Regional Med. Ctr. at Memphis*, 748 F.Supp. 575, 578 (W.D. Tenn. 1990). As the record stands now, it is undisputed that Bockhorst and Brummel were employees of the State of Tennessee, paid exclusively by the State of Tennessee, and acting within the scope of their employment at the time of their treatment of Bobby Duncan. Not one of the "facts" set forth by plaintiffs creates a genuine issue of material fact as to those issues, and, to the extent factual issues might exist, they are immaterial.

The real issue here is whether the Court should grant plaintiffs an opportunity to conduct some discovery on the issues before the Court rules. Rule 56(d) of the Federal Rules of Civil Procedure provides that when the party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court then has three options: (1) defer consideration of or deny the motion; (2) allow time for affidavits or declarations to be obtained or discovery to be undertaken, or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d). "The affidavit required by Rule 56(f)[5] to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered." *Egerer v. Woodland Realty, Inc*., 556 F.3d 415, 426 (6th Cir. 2009).

Plaintiffs seek an opportunity to obtain discovery on several topics: (1) Who received the benefit from the billing and receipt of payment, (2) policies and procedures for processing and disbursement of payroll and billing receipts, (3) all sources of income for those faculty physicians

---

[5] Rule 56 was amended in 2010; subsection (f) was moved to subsection (d).

who provided treatment to Plaintiff Bobby Duncan; and (4) any other information reasonably calculated to lead to discovery of admissible evidence from which a jury could conclude that Bockhorst and Brummel were agents of MEAC when they provided treatment to Plaintiff Bobby Duncan. The defendants have not responded to this request.

While Rule 56(d) is not "a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious," *Emmens v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989), "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). There are several reasons why plaintiffs have done more than make a slight showing here. First, the issue raised by the summary judgment motion is one of fact, not just an issue of law. Second, although the "facts" cited by plaintiffs do not create a genuine issue of fact, plaintiffs' conclusions from those facts are not totally farfetched and implausible. Third, plaintiffs have had no discovery at all at this point. Finally, although plaintiffs' suggested topics for discovery are overly broad and go well beyond the critical question of by whom Bockhorst's and Brummel's "compensation is payable," some of the subjects are directly related to the question before the Court. Plaintiffs will be permitted to conduct limited discovery on the specific matters at issue in the motion and the Court will deny the motion of Bockhorst and Brummel for summary judgment, [Doc. 16], without prejudice until that discovery is completed.

### C. MEAC's Motion For Summary Judgment

The allegations of liability against MEAC in the complaint are based on an alleged agency relationship between MEAC and Bockhorst, Brummel, Dr. Erin Harris, Dr. Beth Anne Fox

and Dr. JoAnne D'Aprile Lubrano. Doctors Harris, Fox and D'Aprile Lubrano are not named as individual defendants by plaintiffs. MEAC raises two bases in support of its motion to dismiss. First, it claims there is no agency relationship between MEAC and any of the doctors named above. Second, MEAC asserts that the complaint fails to state a claim upon which relief may be granted as to the agency relationship between MEAC and Drs. Brummel, Fox, Harris and D'Aprile Lubrano or as to any acts of medical malpractice by the individual doctors.

As to the first ground, the question of an agency or employment relationship between MEAC and any of the individual doctors is factually related to the question raised by Bockhorst and Brummel in their summary judgment motion. For the reasons stated above, that part of the motion will be DENIED WITHOUT PREJUDICE pending limited discovery in the case. Second, while MEAC may be correct that plaintiffs' allegations are conclusory and fail to state a cause of action for medical malpractice as to some of the individual doctors, the proper way to raise that issue is through a motion to dismiss pursuant to Rule 12(b)(6), not through a motion for summary judgment. As a result, the Court declines to address the matter and the second part of the motion is DENIED.

### D. Discovery

As set forth above, plaintiffs will be permitted to conduct limited discovery on the specific matters at issue in the motions for summary judgment. Once discovery is completed, the motions may be re-filed. Further, the Court will extend the time for Bockhorst and Brummel and MEAC to answer to, or otherwise defend, plaintiffs' complaint until the questions raised by the motions for summary judgment are resolved after the completion of limited discovery.

In order to move the case along as expeditiously as possible, counsel for plaintiffs must, within ten (10) days of this order, initiate a conference with counsel for Bockhorst, Brummel

15

and MEAC, and the parties shall within five (5) business days after their conference, submit a joint discovery plan to the Court for approval on the limited issues of Bockhorst's and Brummel's immunity and whether or not there is any agency or employment relationship between Bockhorst and Brummel and MEAC. The discovery plan shall specify (1) the form of the discovery to be used, i.e., interrogatories, depositions, etc.; (2) the names of the individuals, defendants or third parties, or other entities, to whom discovery will be directed; (3) the topics of the discovery stated in specific terms; and (4) the schedule for completion of the discovery. To the extent the parties are unable to agree on the provisions of the plan, the plan must set out the respective positions of the parties. Failure to comply with these requirements may result in a summary grant of summary judgment to the defendants.

## IV.    Motion To Dismiss

Kramer and SAK move, pursuant to Tennessee Rules of Civil Procedure 12.02(6) [6], to dismiss on the grounds that plaintiffs have failed to comply with the mandatory requirements of Tennessee Code Annotated § 29-26-121. Kramer and SAK allege that plaintiffs failed to comply with the statute in three specific ways: (1) they did not file a certificate of mailing from the United States Postal Service with the date of mailing of the notice required by § 29-26-121(a)(3)(B) in compliance with § 29-26-121(a)(4); (2) they did not include Plaintiff Bobby Duncan's date of birth on the notice as required by § 29-26-121(a)(2)(A); and (3) they submitted medical authorizations with their notices that are not HIPAA compliant medical releases as required by § 29-26-121(a)(2)(E).

---

[6]   The Court assumes movants mean Federal Rule of Civil Procedure (12)(b)(6).

16

Plaintiffs respond that they have fully complied with the requirements of § 29-26-121. Specifically, they respond that the required certificate of mailing was attached to the affidavit as required by Tennessee Code Annotated § 29-26-121(a)(4); that the date of birth was included on the notices sent to Kramer and SAK but redacted from the copy filed with the Court pursuant to Federal Rule of Civil Procedure 5.2; and that the medical authorization sent by plaintiffs is routinely acknowledged as HIPAA compliant by medical providers, including all defendants in the case. The Court will deal with each of these issues in turn.

A.     **Certificate of Mailing**

Tennessee Code Annotated § 29-26-121, as noted above, requires a person asserting a potential claim for health care liability to give at least sixty (60) days pre-suit notice of the potential claim to each health care provider that will be a named defendant. The notice requirement may be satisfied by personal delivery or mailing. Tenn. Code Ann. §§ 29-26-121(a)(3)(A) and (B). Here, the notice was mailed pursuant to subsection (a)(3)(B). Section (a)(4) provides:

> (4) Compliance with subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

Tenn. Code Ann. § 29-26-121(a)(4).

Attached to plaintiffs' complaint is the affidavit of counsel which states that "[a] certificate of mailing from the United States postal service" is attached to the affidavit as required by § 29-26-121. Attached to the affidavit was a copy of "Domestic Return Receipt[s]", PS Form

3811, and U.S. Postal Service "Certified Mail Receipt[s]" which demonstrated mailing of the pre-suit notice to SAK and Kramer. Each certified mail receipt is stamped by the postal service with the date of mailing. Kramer and SAK argue that plaintiffs have not complied with § 29-26-121(a)(4) because they used a certified mail receipt rather than a "certificate of mailing," PS Form 3817. The essence of defendants' argument is that plaintiffs used the wrong postal service form.

As noted above, the pre-suit notice requirement of § 29-26-121(a) is mandatory and failure to comply may require dismissal of the plaintiffs' complaint with prejudice. *Myers*, 382 S.W.3d at 310-11. In *Myers*, the Supreme Court expressly declined to "decide whether the statute's requirements as to the content of the notice . . . may be satisfied by substantial compliance." *Id*. at 310. The defendants' motion here is not premised on a failure to file the pre-suit notice; rather, defendants object to the manner in which the plaintiffs chose to demonstrate their compliance with the requirement of the statute by mailing of the notice. The question presented does not appear to have been addressed by any court.

Perhaps some history of the statute at issue would be helpful. The pre-suit notice provisions of § 29-26-121 became effective on October 1, 2008. 2008 Pub. Acts, Ch. 919, § 1. The 2008 Act further required, upon filing of a complaint for medical malpractice, that "the pleading state whether each party has complied with the provisions of § 29-26-121(a) and shall provide such evidence thereof as the court may require to determine if the provisions of this section have been met." *Id*., § 1(b). The original act allowed for actual written notice to the health care provider or the provider's authorized agent or notice by registered mail, return receipt requested.

Substantial changes were made to the pre-suit notice requirements by the 2009 legislature. See 2009 Pub. Acts, Ch. 425, § 1, effective July 1, 2009. Among other things, the 2009

18

legislation specifically outlined the requirements for the contents of the pre-suit notice. *Id*., §

1(a)(2); Tenn. Code Ann. § 29-26-121(a)(2). The statute specifically requires that the written notice

requirements are "deemed satisfied" if served by personal delivery or mail. *Id*.; Tenn. Code Ann.

§ 29-26-121(a)(3). The 2009 legislation added the language quoted above that compliance, if

service of the pre-suit notice is accomplished under subdivision (a)(3)(B), "shall be demonstrated

by filing a certificate of mailing from the U.S. Postal Service stamped with the date of mailing, and

an affidavit of the party mailing the notice, establishing that the specified notice was timely mailed

by certified mail, return receipt requested." Ch. 425 at § 1(a)(4). Notably, it appears that the time

for the filing of the certificate of mailing is not specified in the statute. The statute simply requires

that, if a complaint for health care liability is filed, "the pleading shall state whether each party has

complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2).

The court may require additional evidence of compliance to determine if the provisions of this

section have been met." Tenn. Code Ann. § 29-26-121(b).

   The above referenced history raises two obvious questions: First, may proof of

compliance with § 29-26-121(a)(3)(B) ***only*** be met by the filing of the "certificate of mailing" from

the United States Postal Service? Second, if so, when must the filing be made? The resolution of

both these questions is found in the statute itself. With respect to the first question, under Public

Chapter No. 919, the pleadings were required to state whether the party had complied with § 29-26-

121(a) and, in the event of a dispute, the proof required of that service was left to the discretion of

the court. Under the current statute, the legislature has specifically provided that compliance with

the pre-suit notice requirement when served by mail "shall be demonstrated" through the filing of

a certificate of mailing, although the Court may require additional evidence of compliance. This

19

Court sees nothing in the statute which requires the filing of the certificate of mailing with the complaint, nor is any deadline specifically set.

This Court concludes that, while the legislature did provide that filing of the certificate of mailing would be conclusive proof that the provisions of § 29-26-121(a)(3)(B) have been complied with, the legislature did not provide that the certificate of mailing was the exclusive method of proof. What is mandatory under the statute is pre-suit notice. The provision of the statute that filing a certificate of mailing demonstrates compliance with the mailing requirements of the statute simply has nothing to do with the purpose of § 29-16-121, "[t]he essence [of which] is that a defendant be given notice of a medical malpractice claim before suit is filed." *Myers*, 382 S.W.3d at 309. Second, with respect to the timing of the filing of the certificate of mailing, the Court notes that § 29-26-121(a)(4) does not specify a time for the filing and, to the extent the certificate of mailing is required, the failure to attach that filing under the circumstances of this case can in fact be cured by plaintiffs immediately as part of the Court's record. [7]

## B. Date of Birth

Kramer and SAK next argue that plaintiffs failed to include Mr. Duncan's date of birth on the "Notices." The Court assumes that defendants refer to the requirements of §§ 29-26-121(a)(1) and (2), which require pre-suit notice to include the "date of birth of the patient whose treatment is at issue." Tenn. Code Ann. § 29-26-121(a)(2)(A). Plaintiffs respond that the date of birth as required by the statute was on the notices received by the defendants by United States mail

---

[7] Having said this, the Court would note that a prudent plaintiff's attorney should file the certificate of mailing referred to in § 29-26-121(a)(4) at the time of filing the complaint in every case. Not only would it conclusively establish proof of service by mail, it would avoid the kind of issues that have arisen in this case. The certificate of mailing form is clearly referenced on the website of the United States Postal Service. See https://www.usps.com/send/insurance-and-extra-services.htm and is readily available at any post office.

but that the Plaintiff Bobby Duncan's Social Security number was redacted when copies of those notices were filed along with the complaint. Defendants, in their reply, do not dispute plaintiffs' claim. This portion of defendants' motion is frivolous. The statue requires that the notice include the date of birth of the patient; it did. Although the statute also requires that a copy of the notice be filed with the complaint, nothing suggests that plaintiffs cannot, or should not, comply with the Federal Rules and this Court's Local Rules by redacting personal identifiers such as social security numbers from copies filed with this Court. This claim is completely without merit.

### C.    HIPAA Compliant Medical Authorization

Finally, Kramer and SAK allege that plaintiffs failed to comply with § 29-26-121 by failing to include a "HIPPA [sic] compliant medical release[ ]" which complies with 45 CFR § 164.508(3). Section 164.508(3) provides that "an authorization for use or disclosure of protected health information may not be combined with any other document to create a compound authorization." *Id.* Defendants do not further elaborate on the basis for their argument.

As an initial matter, arguments raised, as this one was, by parties in a conclusory or perfunctory manner are subject to summary rejection. The Court has reviewed the authorization attached to plaintiffs' complaint, however, and it does not appear to be combined with any other document in violation of § 164.508. Without appropriate elaboration from the defendants as to the contours of their argument, the Court will not further consider the matter.

### V.    Conclusion

For the reasons set forth herein, plaintiffs' motion for voluntary dismissal without prejudice and amended motion for voluntary dismissal without prejudice, [Docs. 63, 64], are DENIED; plaintiffs' motion to defer ruling and to certify questions to the Tennessee Supreme Court, [Doc. 49],

21

is DENIED; the motions for summary judgment filed by doctors Bockhorst and Brummel and by

MEAC, [Docs. 16, 42], are DENIED WITHOUT PREJUDICE pending limited discovery as set

forth herein; and SAK's and Kramer's motion to dismiss, [Doc. 29], is DENIED.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
